IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN V. BYNG,<br><br>      Petitioner,<br><br>vs.<br><br>ANTHONY J. ANNUCCI, Acting Commissioner, New York Department of Corrections and Community Supervision,[1]<br><br>      Respondent. | No. 9:18-cv-00994-JKS<br><br>MEMORANDUM DECISION |

  Kevin V. Byng, a former New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. At the time he filed his Petition, Byng was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and incarcerated at Collins Correctional Facility. The DOCCS's inmate locator website (http://nysdoccslookup.doccs.ny.gov/, Department ID Number 11-B-2816), indicates that Byng was conditionally released to parole supervision on October 10, 2019, and he submitted a change of address showing a private address about five days later, Docket No. 76. Respondent has answered the Petition, and Byng has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

  On July 21, 2011, Byng appeared with counsel to enter into a plea agreement that satisfied charges filed against him in Indictment No. I2011-290, in connection with a robbery at a

---

[1]  Because Byng has been released from state prison, Anthony J. Annucci, Acting Commissioner, New York Department of Corrections and Community Supervision, is substituted as Respondent. FED. R. CIV. P. 25(c).

supermarket. Pursuant to that agreement, Byng would plead guilty to second-degree robbery and receive a sentence of eight years' imprisonment, to be followed by five years of post-release supervision. Byng's guilty plea would satisfy the single-count indictment that charged first-degree robbery.

Prior to accepting his guilty plea, the trial court confirmed Byng's understanding that he would be sentenced as a second felony offender because of previous felony convictions. Byng indicated that he had no physical or mental problems that would impede his understanding of the proceedings, and stated that he was a college graduate, with a bachelor's degree in finance, and a former Commissioner of the Albany Housing Authority. Byng also acknowledged that his guilty plea had not been induced by any promise or threat, other than the agreed-upon disposition. Byng further acknowledged that he understood all the rights he was waiving by entering his plea, and separately confirmed that he was giving up his right to appeal the conviction. The court accepted his plea as knowingly and voluntarily entered. The court subsequently sentenced Byng in accordance with the plea agreement (the "September 2, 2011, conviction").

Roughly a week later, Byng again appeared in county court with counsel. By that time, Byng was also considered a suspect in an open bank robbery case. Byng waived his right to a grand jury indictment and proceeded to resolve the other case by superior court indictment. Byng pleaded guilty to attempted third-degree robbery with the understanding that he would receive a sentence of one-and-a-half to three years' imprisonment as a second felony offender that would run concurrent to his prior sentence. Byng was sentenced that day in accordance with the second plea agreement (the "September 8, 2011, conviction").

Through counsel, Byng appealed his convictions in both cases, arguing that his waivers of the right to appeal were not enforceable, and his sentences were unduly harsh and excessive. While his direct appeal was pending, Byng moved pursuant to New York Criminal Procedure Law ("CPL") § 440.20 for a reduction in both sentences, raising both counseled and *pro se* grounds for relief, and also moved *pro se* under CPL § 440.10 to vacate his September 2, 2011, conviction (the "2014 CPL § 440.10 motion").[2] County court denied both motions. Byng sought leave to appeal only the motion to vacate his sentence, and leave to appeal was summarily denied. The Appellate Division of the New York Supreme Court also unanimously affirmed both judgments of conviction on direct appeal in a reasoned opinion issued on March 31, 2017. *People v. Byng*, 49 N.Y.S.3d 331, 332 (N.Y. App. Div. 2017).

Byng then filed pursuant to CPL § 440.10 another *pro se* motion to vacate his September 8, 2011, conviction (the "2017 CPL § 440.10 motion"). According to Byng, relief was warranted because: 1) his constitutional right to due process was violated as a result of a defective grand jury proceeding; and 2) the pre-sentence report ("PSR") produced in connection with that investigation was "deceptive and illegal." County court denied the motion in a reasoned, unpublished opinion issued on October 19, 2017. Byng did not appeal the denial of that motion.

Byng then timely filed the instant *pro se* Petition for a Writ of Habeas Corpus in July 2018. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A). After the Petition was transferred to this Court from the Western District of New York, Byng filed an Amended Petition (Docket No. 27 "Petition"), which is now before the undersigned judge for adjudication.

---

[2] As relevant here, Byng argued in the 2014 CPL § 440.10 motion that he was, "by reason of mental disease or defect, was incapable of understanding or participating in such proceedings;" and counsel rendered ineffective assistance in connection with his plea.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Byng argues that: 1) his plea was involuntary, and he received the ineffective assistance of counsel; 2) the trial judge improperly allowed his principal court attorney, who was the former assistant district attorney representing the People during Byng's plea, to respond to Byng's post-conviction letters and motions; 3) the trial court erred in denying his 2014 CPL § 440.10 motion; 4) his appellate counsel rendered ineffective assistance and he was deprived of due process in connection with his direct appeal; and 5) the indictment charging him with first-degree robbery was defective because the prosecutor misled the grand jury.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating

whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see*

*also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.  **Mootness**

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings.  This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (citation omitted).  Thus, a case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotation marks and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002).  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983).  "[I]f an event occurs during the

course of the proceedings or an appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, [the court] . . . must dismiss the case" as moot. *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citation and internal quotation marks omitted).

      As aforementioned, a review of the DOCCS's inmate locator website indicates that, although Byng was incarcerated at the time he filed his Petition, he was subsequently released on conditional parole. However, a petition for habeas corpus relief does not necessarily become moot when the petitioner is released from prison. Rather, the matter will remain a live case or controversy if there remains "some concrete and continuing injury" or "collateral consequence" resulting from the conviction. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In cases where the petitioner challenges the conviction itself, the Supreme Court "has been willing to *presume* the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement" even if those collateral consequences "are remote and unlikely to occur." *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999) (emphasis omitted) (quoting *Spencer*, 523 U.S. at 8). This presumption of collateral consequences has been justified on the theory that "most criminal convictions do in fact entail adverse collateral legal consequences," including deportation, enhancement of future criminal sentences, and certain civil disabilities such as being barred from holding certain offices, voting in state elections, and serving on a jury. *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (quoting *Sibron v. New York*, 392 U.S. 40, 54-56 (1968)). Moreover, a petitioner serving a term of supervised release is considered "in custody" for purposes of 28 U.S.C. § 2254. *Harvey v. People of the City of New York*, 435 F. Supp. 2d 175, 177 (E.D.N.Y. 2006) (citing *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)).

Accordingly, because Byng is still in the custody of the New York DOCCS[3] and, in any event, still subject to collateral consequences of his conviction, his Petition has not been rendered moot by his release from prison.

B.      **Exhaustion**

Respondent argues that the majority of the claims raised in Byng's Petition are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of

---

[3]     A prisoner conditionally released on parole supervision remains in the legal custody of the DOCCS until the expiration of his full maximum expiration date. *See* N.Y. Department of Corrections and Community Supervision Website, *Inmate Information Data Definitions*, https://publicapps.doccs.ny.gov/ILookup/fpmsdoc.html (noting under "conditional release date" that "[i]f an inmate is conditionally released, he or she will be under parole supervision of some level until his or her term expires (i.e., when the maximum expiration date is reached")).

Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, Byng raised his involuntary plea and ineffective assistance (Ground 1), conflict of interest (Ground 2), ineffective assistance of appellate counsel (Ground 4), and prosecutorial misconduct (Ground 5) claims in his 2014 and 2017 CPL § 440.10 motions. But he did not seek leave to appeal the denial of either of those motions to the Appellate Division. Because claims 1, 2, and 5 appear to be based on the record, the claims could have been raised on direct appeal but were not; consequently, Byng cannot bring a motion to vacate as to such claims. N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal. . . .").

It appears, however, that Byng could still file a *coram nobis* motion in the Appellate Division, raising his ineffective assistance of appellate counsel claims (Ground 4). Because Byng could still exhaust that claim, it is not procedurally defaulted. But even if Byng could still exhaust this claim in state court, the Court declines to stay the Petition and allow him to return to state court to satisfy the exhaustion requirements. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83

9

(2d Cir. 2001). Byng has not requested that this Court stay and hold his Petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

Despite Byng's failure to exhaust his claims, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines*, 544 U.S. at 277. Accordingly, this Court declines to dismiss these claims solely on exhaustion grounds and instead reach the merits of the claims as discussed below.

C. **Merits**

In any event, even if Byng had fully exhausted his claims before the state courts, he still would not be entitled to relief on them. For the reasons discussed below, the Court denies relief on the merits of his unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). As further discussed below, the Court also denies relief on the merits of his exhausted sentencing error claim (Ground 3).

1.      ***Ineffective Assistance of Trial Counsel*** (Grounds 1a)

Byng first argues that his trial attorney rendered ineffective assistance by failing to: 1) investigate a defense based on his alleged intoxication; 2) investigate mitigating factors, including his abusive home life, substance abuse, and ill health; 3) review witness statements about the June 5, 2011, robbery; 4) respond to his letters or provide him with discovery documents prior to the plea entry; and 5) move to dismiss the indictment as defective.  Byng also faults trial counsel for filing the 2013 motion to vacate under CPL § 440.20 rather than § 440.10.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Byng must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

11

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id.* (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New

York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

Byng's ineffective assistance claims must fail, however, even under the more favorable New York standard. As an initial matter, a defendant who pleads guilty to a charged offense generally "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The *Tollett* bar also applies to "ineffective assistance claims relating to events prior to the guilty plea." *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996); *see also People v. Thomas*, 768 N.Y.S.2d 519, 520 (N.Y. App. Div. 2003) (holding that a claim of ineffective assistance of counsel, based on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea).

By voluntarily pleading guilty (as discussed *infra*), Byng forfeited his right to bring claims premised on actions that his counsel should have taken prior to the plea process. The *Tollett* bar thus forecloses Byng's ineffective assistance claims to the extent they relate to matters that arose prior to his guilty plea.

Nor can Byng prevail on the single claim premised after his guilty plea. Byng contends that counsel was ineffective for filing a § 440.20 motion on Byng's behalf rather than a § 440.10 motion. But a viable ineffective assistance of counsel claim exists for Section 2254(d) purposes only if the Supreme Court has clearly established that the Sixth Amendment gives rise to a constitutional right to the assistance of counsel in connection with the proceeding at issue. *See, e.g.,Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (finding no constitutional right to counsel in post-conviction proceedings and opining that "where there is no constitutional right to counsel

there can be no deprivation of effective assistance") (citation omitted).[4]  In the absence of such authority, Byng cannot show that he is entitled to relief.  *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted).

    2.    ***Involuntary Plea*** (Ground 1b)

Byng relatedly argues that trial counsel improperly coerced him into accepting the plea deal.[5]  When a guilty plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void."  *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969) (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)).  Because a guilty plea is a waiver of certain constitutional rights, it must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748 (1970).  The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it."  *Id.* at 749.

---

    [4]    To the extent that Byng argues that the trial court "ignor[ed]" counsel's ineffectiveness on CPL § 440 review, he is not entitled to relief on that contention either.  As there is no constitutional provision requiring a state to grant post-conviction review, *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987), due process claims arising out of the conduct of state post-conviction proceedings are not cognizable on federal habeas review, *Word v. Lord*, 648 F.3d 129, 131-32 (2d Cir. 2011) (holding that "alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for relief").

    [5]    Although this claim also involves pre-plea conduct, an exception to the *Tollett* bar exists where a petition "attack[s] the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards."  *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett*, 411 U.S. at 267); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003).

Here, Byng fails to show that his counsel unlawfully coerced him into accepting the plea. Not only does Byng fail to produce any support for his assertion that plea counsel forced him to accept the plea, the record belies any such contention. Prior to accepting his plea, the court obtained Byng's unequivocal statement that his plea was not induced by force or threat, and that he had not received any promise other than the one offered in the plea agreement. Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). An independent review of the record reflects that the plea was made voluntarily and intelligently, and this ground does not warrant habeas relief.

  3.  ***Trial Court Errors*** (Grounds 2, 3)

Byng also avers that the trial court made two errors warranting habeas relief. First, Byng claims that the trial judge's principal court attorney, who wrote letters on the court's behalf with respect to Byng's motions to vacate filed between 2014 and 2017, had a conflict of interest because she was the assistant district attorney representing the People during Byng's July 2011 plea. In order to prevail on a claim of judicial bias, however, a petitioner must show that he was denied a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964). Even assuming that the court attorney's alleged conflict could be imputed to the trial judge, Byng fails to show that the court attorney had any actual bias or conflict, particularly given that the record shows that the attorney did not present Byng's case to the grand jury and did not represent the People at sentencing.

Byng also contends that the trial court violated CPL § 390.20[6] when it sentenced Byng on September 8, 2011, without ordering a new pre-sentence report and instead relying on the report prepared for sentencing six days before. As discussed above, however, habeas relief is not warranted for violations of state law. *See Estelle*, 502 U.S. at 67-68 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"); *see also Ramirez v. Lempke*, No. 13-cv-72, 2014 WL 3106218, at *7 (N.D.N.Y. Jul 7, 2014) (holding violation of CPL § 390.20 not cognizable on federal habeas review). Byng is therefore not entitled to relief on this ground either.

    4.    ***Denial of Due Process with respect to Direct Appeal*** (Ground 4)

Byng further contends that he was deprived of due process for a variety of reasons associated with his direct appeal. Namely, Byng claims that: 1) his assigned appellate attorneys were selected to ensure that he would lose his appeal, and the counseled appellate brief filed on his behalf failed to sufficiently raise a claim Byng wanted to appeal; 2) his appellate attorneys committed misconduct; 3) the long delay in his appeal violated his right to due process; and 4) the Appellate Division erred in finding that many of the claims raised in his supplemental *pro se* brief were unreviewable on direct appeal.

But with respect to his contentions regarding his appellate attorneys, Byng's bare and conclusory allegations are manifestly insufficient to warrant habeas corpus relief. *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 355 (N.D.N.Y. 2013) ("It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are

---

[6] That section provides that, "where a person is convicted of a felony, the court must order a pre-sentence investigation of the defendant and it may not pronounce sentence until it has received a written report of such investigation." N.Y. CRIM. PROC. L. §390.20(1).

insufficient to state a viable claim for habeas relief."); *see also Woodford v. Visciotti*, 537 U.S. 19, 15 (2002) (*per curiam*) (holding that state habeas petitioner carries the burden of proof). "Undetailed and unsubstantiated assertions [about counsel's alleged shortcomings] have consistently been held insufficient to satisfy either *Strickland* prong." *See, e.g.*, Powers v. Lord, 462 F. Supp. 2d 371, 381-82 (W.D.N.Y. 2006); *Hall v. Phillips*, No. 1:04-CV-1514, 2007 WL 2156656, at *13 (E.D.N.Y. July 25, 2007) (the absence of allegations that demonstrate how counsel was ineffective is "fatal to an ineffective assistance claim on habeas" review).

Nor does Byng show that relief is warranted due to any delay in adjudicating his direct appeal. As the Second Circuit has explained, there is no clearly-established federal law governing appellate delay claims because the Supreme Court has never recognized a right to a speedy appeal.[7] *See Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991); *see also Betterman v. Montana*, 136 S. Ct. 1609, 1615 (2016) ("Adverse consequences of postconviction delay . . . are similarly outside the purview of the Speedy Trial Clause."). Since there is no clearly established federal law governing Byng's appellate delay claim, the state court's decision could not have been "contrary to" or "an unreasonable application of" such a law. *Carey*, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately addressed a claim, a federal court cannot find a state court ruling unreasonable).

---

[7] Notably, the Second Circuit has recognized a due process right to a timely appeal. *See Simmons v. Reynolds*, 898 F.2d 865 (2d Cir. 1990); *Brooks v. Jones*, 875 F.2d 30 (2d Cir. 1989). But those decisions preceded the enactment of AEDPA, which requires habeas courts to look exclusively to Supreme Court precedent when determining if a clearly established federal law governs a petitioner's claim. "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' It therefore cannot form the basis for habeas relief under AEDPA." *See Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (citation omitted).

Byng additionally contends that the Appellate Division "sabotaged" his appeal by ruling that many of the issues raised in his *pro se* supplemental brief were "dehors the record."[8] It is well-established in New York practice that claimed errors that require consideration of evidence outside of the record are not properly raised on direct appeal and should instead be raised in a motion to vacate. *See* CPL § 440.10. As the record fully supports the Appellate Division's ruling that the claims at issue involved matters outside the trial record, Byng is not entitled to relief on this claim either.[9]

5.     ***Prosecutorial Misconduct/Defective Indictment*** (Ground 5)

Finally, Byng argues that the indictment for the June 5, 2011, robbery was defective because the prosecutor who presented the case to the grand jury gave misleading information about the charges. But because the events which give rise to this claim occurred prior to Byng's guilty plea, the *Tollett* bar applies equally here, such that Byng's guilty plea waived his claim of pre-plea misconduct. *See United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) (petitioner's guilty plea waived misconduct claim that prosecutor "misled the Grand Juries to such an extent as to impair their basic function"). The defects alleged in the indictment were "antecedent constitutional infirmit[ies]" unrelated to the "nature of [counsel's] advice and the voluntariness of the plea," and are not independent grounds for federal collateral relief. *Tollett*, 411 U.S. at 266.

---

[8]     The Supreme Court has referred to the term "dehors the record" as "lawyers' language" referring to matters outside the record. *Carter v. Illinois*, 329 U.S. 173, 175 (1946).

[9]     In any event, Byng also raised his non-record-based claims in CPL § 440 motions that the Appellate Division considered and denied.

Moreover, Byng's subsequent conviction forecloses any potential relief with respect to such claim. For federal constitutional purposes, a jury conviction transforms any defect in the grand jury's charging decision into harmless error because the trial conviction establishes probable cause to indict and also proof of guilt beyond a reasonable doubt. *See, e.g.*, *United States v. Mechanik*, 475 U.S. 66, 67 (1986) ("[T]he petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted. Therefore, the convictions must stand despite the [grand jury] rule violation."). In *Lopez v. Riley*, the Second Circuit relied on *Mechanik* in holding that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court." *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *see also Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) ("[C]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." (citing cases)).

District courts in this Circuit have applied this reasoning equally to a conviction achieved by a guilty plea. *See, e.g.*, *Lloyd v. Walker*, 771 F. Supp. 570, 576-77 (E.D.N.Y. 1991) ("Having admitted to the factual basis of the charges against him upon entering a plea of guilty, any error in the proceeding which led to his indictment is . . . rendered harmless, and is not a cognizable claim in a federal habeas proceeding." (internal citation omitted)); *Alston v. Ricks*, No. 01 Civ. 9862, 2003 WL 42144, at *7 (S.D.N.Y. Jan. 7, 2003); *see also United States v. Hansel*, 70 F.3d 6, 8 (2d Cir. 1995) ("[A]ny error in the grand jury proceedings must be considered harmless in light of Hansel's guilty plea."). Furthermore, challenges to the sufficiency of a state indictment

are generally not cognizable on habeas review.  *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir.1989).  Byng is thus not entitled to relief on any argument that the grand jury proceedings were defective.

## V. CONCLUSION

Byng is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 21, 2021.

/s/ James K. Singleton, Jr.<br>
JAMES K. SINGLETON, JR.<br>
Senior United States District Judge